**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ALICIA MARRERO,

                Plaintiff,

vs.                                       Case No.  3:11-cv-666-J-JRK

MICHAEL ASTRUE,
Commissioner of Social Security,

                Defendant.

_____/

## <u>OPINION AND ORDER</u>[1]

### I.  Status

       Alicia Marrero ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for supplemental security income ("SSI") and disability insurance benefits ("DIB").  Plaintiff's alleged inability to work is a result of "hepatitis c, neuropathy, carpal tunnel syndrome, diabetes, bronchitis, arthritis, a back injury, arthritis and joint pain, vision problems, and depression."  <u>See</u> Transcript of Administrative Proceedings (Doc. No. 6; "Tr."), filed September 19, 2011, at 89.  On November 9, 2007, Plaintiff filed applications for SSI and DIB, alleging an onset date of December 18, 2005.  Tr. at 168-70, 171-73.  Plaintiff's applications were denied initially, <u>see</u> Tr. at 94-96, 97-99, and were denied upon reconsideration, <u>see</u> Tr. at 104-05, 106-07.

---

[1]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  <u>See</u> Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 7), filed September 19, 2011; Reference Order (Doc. No. 9), entered September 20, 2011.

On December 3, 2009, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified.[2] Tr. at 31-83. The ALJ issued a Decision on February 16, 2010, finding Plaintiff not disabled through the date of the Decision. Tr. at 14-24. On June 3, 2011, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On July 6, 2011, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises one issue on appeal. See Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 11; "Pl.'s Mem."), filed November 20, 2011. Plaintiff claims that the ALJ did not "properly consider the medical opinions offered by . . . the two examining physicians," Lynn Harper-Nimock, M.D. ("Dr. Harper-Nimock") and Robert W. Sury, M.D. ("Dr. Sury"). Pl.'s Mem. at 1. In opposition, Defendant contends that the ALJ properly considered the medical opinions, and that the ALJ's Decision is supported by substantial evidence. Memorandum in Support of the Commissioner's Decision (Doc. No. 12; "Def.'s Mem."), filed January 19, 2012. After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be reversed and remanded for the reasons explained herein.

---

[2]    The ALJ first held a hearing on October 22, 2009. Tr. at 84-86. At the October 22, 2009 hearing, the ALJ made an opening statement in which she informed Plaintiff and Plaintiff's counsel that she "would like a medical expert, orthopedic surgeon to assist [her] and testify at the next hearing"; therefore, the hearing was rescheduled and held on December 3, 2009. Tr. at 86; see also Tr. at 31-83.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 16-24.  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since December 18, 2005, the alleged onset date."  Tr. at 16 (emphasis and citation omitted).  At step two, the ALJ found Plaintiff suffers from "the following severe impairments: degenerative disc disease of the lumbar spine, degenerative changes of the cervical spine at C5-C6 and C6-C7 with a disk bulge at C5-C6, diabetes, and obesity."  Tr. at 16 (emphasis and citation omitted).  At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. at 17 (emphasis and citation omitted).

---

[3]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ determined Plaintiff "has the residual functional capacity [("RFC")] to perform less than light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b)." Tr. at 18 (emphasis omitted). The ALJ recognized that Plaintiff's "impairments also require her to be given the option to alternate between periods of sitting, standing, and walking at all. In addition, [ Plaintiff] suffers from environmental limitations which preclude her from performing tasks involving heights." Tr. at 18 (emphasis omitted). At step four, the ALJ found Plaintiff "is unable to perform [her] past relevant work" of a "Cake Icer," "Fast Food Worker," or "Restaurant Manager." Tr. at 22 (emphasis and citation omitted). Finally, at step five, after "[c]onsidering [ Plaintiff's] age, education, work experience, and [RFC]," the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [ Plaintiff] can perform," including "Ticket Seller," "Assembler (Small Products)," and "Warehouse Checker." Tr. at 23 (emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from December 18, 2005, through the date of th[e D]ecision." Tr. at 24 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard

is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

As noted above, Plaintiff raises one issue on appeal.  Plaintiff contends that the ALJ erred by assigning only "little weight" to the opinions of Dr. Harper-Nimock and Dr. Sury, both examining physicians, while providing "great weight" to the opinion of Donald I. Goldman, M.D. ("Dr. Goldman"), a nonexamining physician.  Pl.'s Mem. at 7-8.  To place the issue in context, the undersigned summarizes the pertinent parts of the medical opinions at issue, then recites the applicable law, and finally analyzes the issue.

### A.  Summary of Medical Opinions

On March 3, 2008, Dr. Harper-Nimock examined Plaintiff and documented her observations.  Tr. at 587-94.  Dr. Harper-Nimock summarized Plaintiff's medical history, medications, and activities of daily living.  Tr. at 587-89.  She then indicated that Plaintiff "appeared to be in distress."  Tr. at 589.  Plaintiff's gait and stance were documented as

"abnormal," and it was noted that Plaintiff "[c]ould not walk on heels or toes, [and she] could not squat." Tr. at 589. Dr. Harper-Nimock also observed that Plaintiff "needed help changing for [the] exam" and that she "had marked difficulty arising from [the] chair." Tr. at 589. Plaintiff was "able to get on and off [the] exam table." Tr. at 589. Dr. Harper-Nimock made the following observations in relation to Plaintiff's musculoskeletal system:

> [Plaintiff's c]ervical spine showed decreased flexion, extension, lateral flexion, and decreased rotary motion bilaterally. No scoliosis, kyphosis, or abnormality in thoracic spine. Lumbar spine showed decreased flexion, extension, lateral flexion, and decreased rotary motion bilaterally. [ Plaintiff] had positive SLR bilaterally. [ Plaintiff] had decreased ROM of shoulders, elbows, forearms, and wrists bilaterally. Decreased ROM of hips, knees, and ankles bilaterally. Strength 5+/5+ in upper extremities. No evident subluxations, contractures, anklyosis, or thickening. Tenderness to palpation over both knees, elbows, and shoulders.

Tr. at 590. Dr. Harper-Nimock listed fifteen (15) diagnoses: noninsulin-dependent diabetes; hypertension; asthma; hepatitis C; bilateral carpal tunnel disorder; degenerative disk disease; degenerative joint disease; hyperlipidemia; migraine headaches; memory impairment; hypothyroidism; gastroesophageal reflux disorder; nicotine dependency; morbid obesity; and peripheral neuropathy. Tr. at 590. Dr. Harper-Nimock opined that Plaintiff's prognosis was "[p]oor," and that Plaintiff "ha[d] moderate-to marked limitation for prolonged sitting, standing, walking, climbing, or heavy lifting." Tr. at 591.

On April 27, 2009, Dr. Sury examined Plaintiff, documented his findings in a letter to Plaintiff's counsel, Tr. at 833-37, and completed a Physical Residual Functional Capacity Questionnaire, Tr. at 838-42. Dr. Sury reviewed Plaintiff's medical records and provided a summary of such records. Tr. at 834. One of the records he reviewed was Dr. Harper-Nimock's examination notes. Tr. at 834. Dr. Sury indicated that he did not review any

"films," because "[n]o films [we]re available for review today." Tr. at 836. Upon examination of Plaintiff, Dr. Sury observed that Plaintiff "ambulate[d] with a stiff gait." Tr. at 836. He also observed Plaintiff had "75% of normal" range of motion in her cervical spine and "spasm [was] present in the upper trapezius and lumbar paraspinals." Tr. at 836. "Examination of [Plaintiff's] shoulders reveal[ed] 90 degrees of abduction, 120 degress of forward flexion. Examination of [Plaintiff's] knees reveal[ed] diffuse tenderness to palpation. There [was] no increase in low back pain with light touch over a wide area of the lumbar spine, with vertical loading over the skull, or with passive rotation of the shoulders and the pelvis in the same plane." Tr. at 836. Dr. Sury noted "[s]traight leg raising [was] negative." Tr. at 836. Dr. Sury listed ten (10) impressions after completing his examination: hypertension; hepatitis C; diabetes mellitus; osteoarthritis affecting the shoulders, knees, and feet; lower back pain with evidence of lumbar strain; neck pain with evidence of cervical strain and C5-6 bulging disc and spondylosis; carpal tunnel syndrome; postherpetic polyneuropathy, moderate to severe myalgia and myositis; anxiety; and asthma. Tr. at 836. Dr. Sury opined that "[d]ue to the chronic nature of [Plaintiff's] medical problems [he did] not anticipate that [Plaintiff would] be able to return to gainful employment even on a part time basis." Tr. at 837. On the Physical Residual Functional Capacity Questionnaire, Dr. Sury opined that Plaintiff's conditions have lasted or can be expected to last for at least twelve (12) months. Tr. at 838.

The ALJ requested that Dr. Goldman appear at the hearing, and he did so via telephone. Tr. at 33. According to his resume, Dr. Goldman is a "Medical Expert 'Orthopaedic Surgery' Social Security Administration." Tr. at 1091-92. Throughout his testimony, Dr. Goldman repeatedly advised that he was testifying "as an orthopedic surgeon"

and his opinions were limited to Plaintiff's orthopaedic issues.  Tr. at 38; <u>see also</u> Tr. at 41, 42, 52, 58, 65.  When asked if it was his opinion that Plaintiff met any of the listings, Dr. Goldman replied, "As an orthopedist the answer is, no, she does not."  Tr. at 41.  The ALJ then asked Dr. Goldman if Plaintiff had "such limitations that she would be unable to perform even sedentary work."  Tr. at 41-42.  Dr. Goldman answered that "from an orthopedic point of view, . . . the record has to speak for itself, the answer is no."  Tr. at 42. After what the Commissioner described as "a heated cross examination," Def.'s Mem. at 13, the ALJ asked Dr. Goldman if his opinion remained the same, Tr. at 51-52.  Dr. Goldman stated, "Again I'm only going to discuss the field of orthopedic surgery, obviously there are a lot of other issues here[,] . . . [b]ut from an orthopedic point of view, so to speak, there is nothing here that meets or equals a listing."  Tr. at 52.

Dr. Goldman testified that Dr. Harper-Nimock's opinion and Dr. Sury's opinion were inconsistent with the medical evidence of record and that the opinions are questionable because they do not document exactly how certain testing was performed.  <u>See</u> Tr. at 55-56, 60, 65-67.  Dr. Goldman also indicated he "would find fault with the fact that [Dr. Harper-Nimock] is an internist."  Tr. at 56.  Dr. Goldman, after concluding his testimony, asked the ALJ if he could make one last comment.  Tr. at 71.  The ALJ permitted him to do so, to which Dr. Goldman stated, "Did counsel actually think I was going to disagree with the Judge? What kind of question was that? . . . That would never happen, Counsel. Never happen." Tr. at 71-72.

**B. Applicable Law**

The Regulations establish a "hierarchy" among medical opinions[4] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of nonexamining physicians[;] treating physicians'[] [opinions] are given more weight than [nontreating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of nonspecialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  Examining physicians' opinions are not entitled to deference.  See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted).  Nevertheless, an ALJ is required to consider every medical opinion.  See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive").

Generally, the opinions of nonexamining physicians, taken alone, do not constitute substantial evidence.  Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)).  However, an ALJ may rely on a nonexamining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of a treating physician that is inconsistent with the evidence. Oldham, 660 F.2d at 1084.  The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the

---

[4]        "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2).

frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

### C. Analysis

In her Decision, the ALJ found that "[t]he record reveals extensive medical treatment but scant objective medical evidence that substantiates [ Plaintiff's] allegations." Tr. at 18. In making that finding, the ALJ credited the testimony of Dr. Goldman and summarized some of the exhibits in the record. See Tr. at 18-20. In addition to summarizing some of the exhibits, the ALJ "note[d] two particular examinations of [ Plaintiff]"–Dr. Harper-Nimock's examination and Dr. Sury's examination–and the ALJ assigned "little weight" to each of these physician's opinions. Tr. at 20. As to Dr. Harper-Nimock's opinion, the ALJ listed two reasons for assigning it "little weight:" (1) the ALJ "agree[d] with the assessment of Dr. Goldman" as otherwise explained in the Decision; and (2) "the objective medical evidence contrasts with Dr. Harper-Nimock's opinion." Tr. at 20. As an example, the ALJ noted that "numerous treating physicians over a course of years have noted [ Plaintiff's] gait" to be "normal." Tr. at 20. Regarding Dr. Sury's opinion, the ALJ listed three reasons: (1) "much of Dr. Sury's conclusions [were] based on Dr. Harper-Nimock's examination; (2) "Dr. Sury stated in his examination that he did not review any of [ Plaintiff's] films"; and (3) "some of the results in [Dr. Sury's] examination," such as Plaintiff's "straight leg raising was negative,

her motor strength was rated at '4/5,' and there was 'no increase in low back with light touch over a wide area,'" "do not support [Dr. Sury's] conclusions of severe impairments."  Tr. at 20.

The ALJ then listed the following five (5) reasons for according "great weight" to the opinion of Dr. Goldman: (1) Plaintiff's "disc bulge, without more, is not indicative of anything. There must be another associative finding"; (2) "the May 2008 MRI of the cervical spine does not find enough without other physical findings"; (3) regarding Dr. Harper-Nimock's evaluation, "Dr. Goldman noted she is an internist and her conclusions about [ Plaintiff's] various physical conditions are not related to that specialty. In addition, her findings as to [ Plaintiff's] range of motion are not substantiated by measurements and not supported in the record"; (4) "as to [Plaintiff's] medications, Dr. Goldman concluded that from an orthopedic viewpoint [ Plaintiff] does not need her medications"; and (5) "as to Dr. Sury's findings . . . Dr. Goldman concluded that one would expect to see more objective findings supporting his conclusions, especially given the permanent nature of the impairments."  Tr. at 21.  As an example in support of the fifth reason, the ALJ stated that "the x-rays of [ Plaintiff] found there was no arthritis, but Dr. Sury concluded there was.  In addition, while Dr. Sury noted [ Plaintiff] had difficulty bending x-rays revealed nothing to indicate that she should have no problem doing so."  Tr. at 21.

Upon review of the entire record and for the reasons explained below, the undersigned cannot determine whether the ALJ's Decision is supported by substantial evidence.  Because the ALJ largely relies on Dr. Goldman's opinion in making her ultimate Decision as well as in discounting the opinions of Dr. Harper-Nimock and Dr. Sury, the

undersigned first addresses Dr. Goldman's opinion, followed by a discussion of the opinions of Drs. Harper-Nimock and Sury.  Finally, the undersigned points to parts of the ALJ's Decision relating to these medical opinions that are so vague that they frustrate judicial review.

### 1.  Dr. Goldman

At the outset, it is noted that the ALJ's reasons for assigning "great weight" to Dr. Goldman's opinion are not a model of clarity.  With the third and fifth reasons, which are listed above, it seems the ALJ intermixed her reasoning for affording "great weight" to Dr. Goldman with her reasoning for affording "little weight" to Drs. Harper-Nimock and Dr. Sury. The ALJ's first, second, and fourth reasons are merely conclusory statements without any context.  Although the ALJ listed five (5) reasons, there is no explanation as to how those reasons support Dr. Goldman's opinion, and in turn, support the ALJ's Decision.

Additionally, Dr. Goldman testified as to Plaintiff's orthopedic issues <u>only</u>, while recognizing that Plaintiff has "other medical problems" about which he could not offer an opinion. Tr. at 58-60.  This alone casts doubt on Dr. Goldman's testimony, given he could not provide a complete opinion on Plaintiff's overall medical condition.   Yet, the ALJ comprehensively relies on Dr. Goldman's testimony.

In relying on Dr. Goldman's testimony, the ALJ found that "the medical evidence indicates there is no objective evidence that indicates an orthopedic medical impairment." But, as noted by Plaintiff, there is medical evidence in the record that contradicts Dr. Goldman's orthopedic assessment.  <u>See, e.g.</u>, Tr. at 336 (observing tenderness, swelling, and limited range of motion in Plaintiff's forearm/elbow); 408 (noting paraspinous tenderness

and sacroiliac joints tenderness and pain on straight left leg raises); 469 (finding "[m]ultilevel hypertrophic degenerative change and facet arthropathy, most prominent in the lower lumbar spine"); 471 (documenting an antalgic gait and "[t]enderness to palpation along the lumbar spine"); 479-80 (documenting "bilateral neural foraminal narrowing related to bony encroachment" and "degenerative changes of the cervical spine"). The ALJ does not offer an explanation as to why "great weight" was given to Dr. Goldman's opinion in face of what appears to be evidence contradicting his opinion.

Overall, the ALJ's failure to adequately and clearly explain her reliance on Dr. Goldman's opinion leaves the undersigned unable to review the Decision to determine whether it is supported by substantial evidence. On remand, the ALJ shall reconsider Dr. Goldman's opinion, assign it the appropriate weight, and explain the assignment of weight with reasons supported by substantial evidence.[5]

### 2. Dr. Harper-Nimock

As noted above, the ALJ's two (2) reasons for providing "little weight" to Dr. Harper-Nimock's opinion are as follows: (1) the ALJ "agree[d] with the assessment of Dr. Goldman" as otherwise explained in the Decision; and (2) "the objective medical evidence contrasts with Dr. Harper-Nimock's opinion." Tr. at 20. As an example in support of the second reason, the ALJ noted that "numerous treating physicians over a course of years have noted

---

[5]       Plaintiff also questions Dr. Goldman's impartiality based on Dr. Goldman's comments made after Dr. Goldman concluded his testimony. See Pl.'s Mem. at 18; Tr. at 71-72. In light of the undersigned's findings, this argument need not be addressed. On their face, though, the comments indeed appear to have been inappropriate. But, in reality, Dr. Goldman could have made the comments in jest. It is impossible to make such a determination from a cold transcript.

[ Plaintiff's] gait" to be "normal."  Tr. at 20.  Overall, the undersigned finds that both these reasons are so vague that they impede judicial review.

As to the first reason, although it is true that Plaintiff's gait was generally found to be normal,[6] this one example is insufficient to support the ALJ's conclusion that Dr. Harper-Nimock's opinion was contrary to the medical evidence.  Dr. Harper-Nimock made numerous other positive findings during her examination that were consistent with the medical evidence of record.  For example, Dr. Harper-Nimock observed that Plaintiff had decreased range of motion of her shoulders, elbows, forearms, and wrists bilaterally and that Plaintiff had decreased flexion and extension in her cervical and lumbar spine.  Tr. at 590.  The record contains treatment notes spanning a period of years that document Plaintiff's limitation in range of motion in her upper and lower extremities, see Tr. at 723, 847, 941, 952, 957, 963, 973, 976, 982, and decreased range of motion in her back, see Tr. at 847, 941, 953, 964, 982.  Likewise, the ALJ's second reason–namely that the ALJ agreed more with Dr. Goldman's opinion–is not sufficiently explained.  This lack of explanation leaves the undersigned without enough information to determine whether the Decision is supported by substantial evidence.

In sum, the ALJ's summary dismissal of Dr. Harper-Nimock's opinion without providing a sufficient explanation impedes judicial review.  The Court is unable to determine whether the Decision is supported by substantial evidence.  Accordingly, on remand, the ALJ shall reconsider Dr. Harper-Nimock's opinion, assign the opinion the appropriate weight, and

---

[6]     Other than Dr. Harper-Nimock's examination, Dr. Sury's examination, and one treatment note dated June 8, 2007 (Tr. at 471), Plaintiff's gait was always observed as being "normal."  Plaintiff's gait was not tested due to pain on May 8, 2009.  Tr. at 876.

clearly explain the reasoning for doing so, such reasoning being supported by substantial evidence.

### 3.  Dr. Sury

The ALJ listed three reasons for providing "little weight" to Dr. Sury's opinion, those reasons being as follows: (1) "much of Dr. Sury's conclusions [were] based on Dr. Harper-Nimock's examination; (2) "Dr. Sury stated in his examination that he did not review any of [ Plaintiff's] films"; and (3) "some of the results in [Dr. Sury's] examination do not support his conclusions of severe impairments," such as Plaintiff's "straight leg raising was negative, her motor strength was rated at '4/5,' and there was 'no increase in low back with light touch over a wide area.'" Tr. at 20.

The first two reasons are simply inaccurate.  Dr. Sury's report does not indicate that "much of his conclusions are based on Dr. Harper-Nimock's examination."  And, as pointed out by Plaintiff, there are no "films" in the record that Dr. Sury could have reviewed.  See Pl.'s Mem. at 11-12.  Discounting Dr. Sury's opinion on these bases was not appropriate. Regarding the third reason, the ALJ cited some of Dr. Sury's findings and concluded that the findings do not support the severe limitations he imposed.  Dr. Sury's findings, however, were not limited to the ones listed by the ALJ, and the ALJ does not discuss the other positive findings made by Dr. Sury.

Due to the ALJ's lack of clarity and explanation, the undersigned cannot determine whether the ALJ's decision to afford "little weight" to Dr. Sury's opinion is supported by substantial evidence.  On remand, the ALJ shall also reconsider Dr. Sury's opinion, assign

it the appropriate weight while providing clear reasoning for doing so.  Such reasons shall

be supported by substantial evidence.

### 4.  Related Problems with the ALJ's Decision

The ALJ's Decision at first blush appears detailed and well-documented.  However,

upon closer review, the ALJ's global citation to exhibits and general discussion of various

findings frustrate judicial review.

Additionally, throughout the Decision, the ALJ notably miscites and/or selectively

focuses only on evidence that supports her ultimate finding.  For example, the ALJ cited to

a July 24, 2006 examination of Plaintiff during which Anna Gajda, M.D. made the following

observations:

> [Plaintiff's] neck was without thyromegaly, nodules, or masses; she
> possessed normal gait and station; and upon examination her spine was
> without deformity, she had good muscle tone and strength, and no swelling,
> tenderness, or limitation of motion of any joint.  These conclusions were
> echoed during additional visits throughout the fall of 2006 and into 2007.

Tr. at 19 (citing Ex. 26F).  While parts of the ALJ's summary is correct, Dr. Gajda's notes

actually reflect that Plaintiff exhibited positive "left wrist tenderness," and "thoraco/lumbar

spine pain with ROM [and positive] tenderness on palpation lumb[r]osacral area."  Tr. at

1005.  Dr. Gajda also noted Plaintiff had joint pain and joint stiffness as well as back pain.

Tr. at 1004.  Throughout Exhibit 26F, which the ALJ cited as "echo[ing]" Dr. Gadja's

conclusions, there are numerous indications of Plaintiff experiencing "[p]ain with ROM both

sh[]oulders" and "thoraco/lumbar spine pain with ROM," Tr. at 985, 988, 991, 994, 997, 1001;

and joint pain, stiffness, and swelling as well as back pain, Tr. at 985, 988, 991, 994; see

also Tr. at 973 (noting limitations in Plaintiff's range of motion in her upper and lower

extremities), 976 (same), 980 (same), 982 (same).  Without a discussion from the ALJ explaining how she accounted for these contrary findings, the undersigned cannot find that the ALJ's Decision is supported by substantial evidence.  As it stands, the ALJ's Decision frustrates judicial review.

## V.  Conclusion

After a thorough review of the record, the undersigned finds that the ALJ improperly relied on Dr. Goldman's opinion and failed to properly consider the opinions of Drs. Harper-Nimock and Sury, as well as the record as a whole.  After due consideration, it is

**ORDERED**:

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)     Reevaluate the medical opinions of Drs. Goldman, Harper-Nimock, and Sury; assign appropriate weight; and provide reasons supported by substantial evidence for assigning such weight;

(B)     Reevaluate the medical evidence as a whole; and

(C)     Take such other action as may be necessary to resolve this claim properly.

2.     The Clerk is further directed to close the file.

3.    In the event benefits are awarded on remand, Plaintiff's counsel be permitted thirty (30) days from receiving notice of the amount of past-due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b).  See Bergen v. Comm'r of Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida on August 23, 2012.

*James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

jld
Copies to:
Counsel of Record